UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANA MIRICK,<br><br>    Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, *et al.*,<br><br>    Defendants. | No. C14-1801RSL<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on "Plaintiff's Motion for Summary Judgment and/or for Entry of Judgment Under Fed. R. Civ. P. 52" (Dkt. # 24) and "Defendants' Cross-Motion for Summary Judgment or for Entry of Judgment Under Fed. R. Civ. P. 52" (Dkt. # 29). Plaintiff brought this action for disability insurance benefits against defendants pursuant to the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1132.

## BACKGROUND

Plaintiff is employed at the Fred Hutchinson Cancer Research Center as a biostatistician investigating the role of disrupted circadian cycles as they relate to cancer risk. Plaintiff was diagnosed with unspecified connective tissue disease, a chronic autoimmune disease, in 2000. For approximately a decade, she successfully managed her condition with a combination of medicine, a gluten-free diet, and exercise. She was able to work full-time despite flare ups of her symptoms. In January 2013, however, she began experiencing near constant headaches and a marked increase in joint pain, fatigue, and sleep disturbance. By

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 1

August 2013, she realized that she was experiencing a decline in her cognitive abilities: her work was taking longer to complete than it should have, she could not recall work that she had done in the past, and she was having to turn down projects because she could not focus or comprehend the problem.[1] When she adjusted her work schedule to provide extended periods off, she noticed a slight improvement in her symptoms. Her rheumatologist, Dr. Brodie, put her on Prednisone, but a therapeutic dose caused severe headaches and dizziness: a lower dose was inadequate to provide pain relief.

In consultation with her doctor, plaintiff decided to take a medical leave of absence from work in the hopes that a reduction in stress and an increase in rest would alleviate her symptoms and so that she could see a neurologist and sleep specialist to help diagnose and treat her condition. Plaintiff applied for short-term disability ("STD") benefits under an ERISA plan offered by her employer. Prudential denied the claim in December 2013 on the ground that there were "no acute findings in the physical exam notes or lab results, the MRI completed on October 21, 2013 is within normal limits, and there are no restrictions provided by your medical provider. While we understand that you may be experiencing an increase in your symptoms the medical documentation does not indicate a severity of symptoms or intensity of treatment that would prevent you from performing the duties of your job." AR 946. Plaintiff provided additional medical records and a letter, part of which is quoted in footnote 1, describing her work, her medical history, the effects of her disease on her ability to perform her

---

[1] Plaintiff, whom no one has accused of malingering or lying, described her situation as follows:

> I was managing to work despite the pain and exhaustion, but my cognitive issues became much more troublesome in the following months. By August 2013 it was apparent to me that my work was taking me 2-3 times what it should to complete, and I had to turn down several new projects because I just couldn't focus and "wrap my head around them." Worse, I was having difficulty recalling work I've done in the past; I was often picking up statistical programs I had developed or research papers I had written that I had no recollection of working on. This has been frightening.

AR 866.

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 2

job, and why she needed a leave of absence. AR 866-67. Prudential was not impressed, sticking with its prior decision because "the physical exam reports currently available for review do not indicate abnormal findings or loss of cognitive or physical function that would result in an inability to perform the duties of your job." AR 943.

Plaintiff filed a formal appeal of the denial decision on February 12, 2014, and provided a declaration from Dr. Brodie, a declaration from her neurologist, Dr. Reif, and the results of a single photon emission computed tomography ("SPECT") study of her brain demonstrating moderate to severe perfusion abnormalities scattered throughout the tissue. Both doctors addressed the impact of plaintiff's condition on her ability to work, and plaintiff provided a copy of her curriculum vitae to show the nature of her work. Prudential obtained a medial record file review. The reviewer took issue with Dr. Brodie's description of plaintiff's diagnosis as "unspecified connective tissue disease, mostly likely systemic lupus erythematosus, often referred to as lupus" and opined that anyone who had central nervous system impacts from lupus would "have more than confusion, fatigue, memory loss, and difficulty expressing their thoughts. They usually become comatose and are at risk of death and require high-dose steroids. None of this has been noted in any of the reports or evaluations of Ms. Mirick." AR 562-63. Although the reviewer acknowledges the existence of the SPECT results and Dr. Reif's conclusion that the multiple perfusion abnormalities shown are consistent with the neurocognitive dysfunction deficits of which plaintiff complained, he does not address the findings or conclusions, instead rejecting Dr. Reif's opinions because she "is diagnosing lupus on the SPECT abnormalities rather than diagnosing lupus from the claimant and the claimant's symptoms . . . ." AR 563. Shortly after receiving this review, Prudential rejected plaintiff's appeal of the denial of STD benefits and sua sponte disallowed a claim under the long-term disability ("LTD") benefits plan. AR 930. Prudential relied heavily on the reviewer's analysis, concluding that there was no clinical evidence to support a diagnosis of lupus and that her reported limitations on her ability to work were not confirmed diagnostically. AR 935-36.

Plaintiff's second level appeal of the STD denial and her first level appeal of her LTD denial were also rejected. Prudential was unswayed by Dr. Brodie's response to the

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 3

reviewer's findings, fourteen years' worth of medical records regarding plaintiff's unspecified connective tissue disease, statements and records from Dr. Reif and a neuropsychologist, examples of plaintiff's research papers, a copy of plaintiff's job description, or recent treatment records. Instead, it relied on further consultation with the medical reviewer, a file review conducted by a neurophychologist, and a vocational consultant's opinions regarding whether plaintiff's job duties would allow her to take breaks or required her to recall visual material. Prudential reiterated that there were no physical limitations that would preclude plaintiff from working and, while acknowledging "some minor cognitive weaknesses," concluded that they would not "impact Ms. Mirick in the performance of her regular occupation, on a full-time basis. In fact, it has been reported that Ms. Mirick has returned to work in June of 2014 with her employer, on a part-time basis." AR 915.

## DISCUSSION

### A. Standard of Review

Under ERISA, the proper standard of review of a plan administrator's benefits denial is *de novo* unless the plan grants discretionary authority to the administrator. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where the plan gives the administrator discretionary authority, the court reviews the decision for abuse of discretion. Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 866 (9th Cir. 2008). Defendants assert that, although the STD plan states only that Prudential has the authority to make benefits determinations (AR 407), the Summary Plan Description ("SPD") and its Administrative Services Agreement ("ASA") with the employer grant Prudential discretion in exercising that authority (AR 29 and 427).

This argument fails for one of two reasons. The SPD and the ASA are generally not considered part of the ERISA plan. Becker v. Williams, 777 F.3d 1035, 1039 n.3 (9th Cir. 2015) ("The Supreme Court has specifically excluded the statutorily mandated summary plan description . . . as a source of the plan's governing terms."); Fritcher v. Health Care Serv. Corp., 301 F.3d 811, 817 (7th Cir. 2002) (the service contract between the employer and the claims administrator is not a "'plan document' for purposes of holding its terms against a plan

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 4

participant or beneficiary."). If these additional documents are not part of the plan, the terms of the plan itself – which simply states that Prudential will make benefits determinations – control.[2] If, on the other hand, the SPD or the ASA are part of the plan, then Washington State law invalidates the attempt to grant deference to Prudential's claim decision. WAC 284-96-012 ("No disability insurance policy may contain a discretionary clause."); Landree v. Prudential Ins. Co. of Am., 833 F. Supp.2d 1266, 1273-74 (W.D. Wash. 2011) (the state regulation is not preempted and invalidates any discretionary language contained in an ERISA plan). Either way, the *de novo* standard of review applies in this case.[3]

### B. Benefits Determination

After an "independent and thorough inspection" of the record and the administrator's decision, the Court finds that the denial of STD benefits was in error. Silver v. Executive Car Leasing Long-Term Disability Plan, 466 F.3d 727, 728 (9th Cir. 2006). Ms. Mirick reported cognitive difficulties that significantly interfered with her ability to perform at the high level required by her job as a biostatistician. She has both a diagnosis and objective

---

[2] To the extent Prudential is arguing that its designation as the entity that will make benefits decisions is enough to grant discretionary authority, it is incorrect. As the Ninth Circuit has held:

> We think it appropriate to insist . . . that the text of a plan be unambiguous. If an insurance company seeking to sell and administer an ERISA plan wants to have discretion in making claims decisions, it should say so. It is not difficult to write, "The plan administrator has discretionary authority to grant or deny benefits under this plan." When the language of a plan is unambiguous, a company purchasing the plan, and employees evaluating what their employer has purchased on their behalf, can clearly understand the scope of the authority the administrator has reserved for itself. As we wrote in Sandy, it is "easy enough" to confer discretion unambiguously "if plan sponsors, administrators, or fiduciaries want benefits decisions to be reviewed for abuse of discretion. Where they fail to do so, "in this circuit at least, they should expect de novo review."

Ingram v. Martin Marietta Long Term Disability Income Plan, 244 F.3d 1109, 1113-14 (9th Cir. 2001) (quoting Sandy v. Reliance Standard Life Ins. Co., 222 F.3d 1202, 1206 (9th Cir. 2000)).

[3] The parties agree that the LTD plan does not confer discretionary authority on the claims administrator.

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 5

findings (including the SPECT scan and cognitive testing) that support her subjective reports. She and her doctor agreed that time off from work was necessary to reduce her symptoms and provide an opportunity to investigate treatment options. Based on nothing more than (1) its reviewing doctor's insistence that if plaintiff does not have lupus, she must be able to perform her job and (2) a vocational consultant's opinion that plaintiff's employer would likely allow her to take breaks during the workday, Prudential concluded that plaintiff was able to perform the material and substantial duties of a biostatistician in December 2013 and again on appeal. This was error. Ms. Mirick adequately established that she could not perform the high-level analyses and research that were normally required for her job.

      Prudential argues that the fact that Ms. Mirick returned to work part-time in June 2014 shows that she was not then, nor ever had been, disabled. As an initial matter, what Ms. Mirick could or could not do in June 2014 tells us very little about her capabilities in late 2013 when she applied for disability benefits. As of June 2014, plaintiff had taken nine months off to reduce her stress level, increase her ability to rest, and pursue additional diagnostic and treatment options. Any or all of those activities could explain a change of circumstances, if one had occurred.

      In fact, Ms. Mirick has not been cured and continues to be disabled under the policies. In rejecting her claim for benefits, Prudential made no attempt to ascertain why or in what capacity plaintiff returned to work. Her declaration shows that she was forced to return to work despite her condition and has been able to continue her employment only because her employer was willing to alter her job duties:

> I was compelled to return to work by financial hardship, including a need to preserve my health insurance benefits for myself and my family. I presently work only 2 ½ days per week (Mon, Tues, Wed, 20 hours/week), whereas before I worked Monday - Friday and occasionally weekends totaling approximately 50 hours/week. I work at a far less productive level than before, and do not perform all of the regular job functions I previously did. Because of this, my research program is no longer in a position to pursue future funding and I have had to accept a position in another program within the Fred Hutchinson Cancer Research Center that is essentially a demotion. I do my best to work through my joint pain, headaches, and physical and cognitive fatigue. By the end of

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 6

> Wednesday I am completely exhausted, and the remaining four days allow just enough time away to recuperate and be able to start all over again on Monday. I am grateful that Fred Hutchinson has allowed me to return on a part-time basis, but I question whether it is truly receiving the work it is paying me for. If my disability benefits had been approved, I would not have returned to work on a part-time basis as I did.

Dkt. # 33 at ¶ 2. "Disability" under both the STD and the LTD is defined not as a complete and total inability to perform work, but rather as the loss of 20% or more of earnings due to the sickness or injury that rendered the employee unable to perform the material and substantial duties of the job. Thus, both policies recognize that an employee may be entitled to benefits even if she is able to work part time. The fact that Ms. Mirick returned to work in June 2014 in no way invalidates her claim for benefits.

## CONCLUSION

For all the foregoing reasons, the Court finds that Ms. Mirick was disabled as that term is defined in both the STD and LTD plans administered by Prudential. The Court therefore GRANTS plaintiff's motion for summary judgment (Dkt. # 24) and DENIES defendants' cross-motion for summary judgment (Dkt. # 29). The Clerk of Court is directed to enter judgment in favor of plaintiff and against defendants.

Dated this 27th day of April, 2015.

Robert S. Lasnik
United States District Judge

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 7